THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PEDRO MILLÁN CARRIÓN, Defendant and Appellant.

No. 14227. Argued May 2, 1950.—Decided May 23, 1950.

*Diego O. Marrero* and *Federico Valladares* for appellant. *Vicente Géigel Polanco,* Attorney General, (*José C. Aponte,* Acting Attorney General, on the brief), and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The appellant herein was convicted of the crime of grand larceny and subsequently sentenced to a penalty of from one to ten years' imprisonment in the penitentiary. On appeal, he assigns two errors: (1) that the verdict was contrary to the evidence and (2) that the lower court erred in not summing up the evidence.

The evidence for the prosecution, as correctly summarized by the *Fiscal* of this Court, in his brief, is the following:

"*Mario González Molina,* testified that he lives at No. 624 Bartolomé Las Casas Street, Villa Palmeras, and works as chauffeur in the taxi enterprise 'Majestic Taxi Cabs'; that on July 18, 1948, he was going to his brother's house located at Buenos Aires Ward, Stop 26½, Santurce; that it was about 11:45 P.M.; that upon going down Stop 26½, he encountered the defendant Pedro Millán Carrión who called the witness and asked to buy him (the defendant) a shot of rum (P. 3–4 Tr. Ev.); that the defendant insisted on the witness buying him the shot of rum, to which the witness consented, telling him that he was

going to buy it, but that he was leaving immediately. That they entered a restaurant which is located near the corner of the railway track, and they were served a glass of beer and the defendant said that he wanted a whole bottle of rum; that the witness refused to pay for it and commenced to leave; that the defendant talked to several persons who were playing a juke box and who approached the witness; that they attacked him with their fists, and the defendant was the first who attacked and battered the witness; that they grappled and fell to the floor, the defendant on top of the witness; that while they were fighting Miguel Collazo Pérez came and took off the witness's hat and assaulted and battered him with his feet; that while the witness was struggling with the defendant, said defendant put his hand into witness's right pocket (p. 6 Tr. Ev.) ; that when he arrived at the next Majestic Taxi Cab Station, he searched his pocket and did not find the money (P. 7 Tr. Ev.) ; that he had in his pocket $12 (P. 7 Tr. Ev.) ; that he arrived at the Taxi Station and asked for a taxi to take him to Police Headquarters at Stop 19 and reported the occurrence (P. 9 Tr. Ev.) ; that he could not identify the other persons who attacked and battered him. The witness identified the hat he was wearing on that night. He also testified that Manuel Collazo, one of the codefendants took off witness's hat and went out with it. Upon being examined by the defense the witness testified that on that day he had taken some liquor, that he had taken two shots of rum (P. 12 Tr. Ev.) ; that he was not acquainted with the defendants (P. 13 Tr. Ev.) ; that when he arrived at Martín Peña Station, he became aware that he did not have the money (P. 14 Tr. Ev.).

"One of the jurors examined the witness, and the following colloquy took place:

" 'Q.—Did you testify that this defendant when you were on the floor took something out from your jacket pocket? Could you see what he took out?

" 'A.—The only thing I had was the money.

" 'Q.—Did you see that he took out the money?

" 'A.—I saw that he took out a small package that I had there. I had nothing else than the money. I saw the small package when he had it already in his hands. I did not have any other papers or nothing else. I kept it like that to put it in my wallet.

" 'Q.—Since you had a five dollar bill and ten one dollar bills, how can you recall that you had only 12 dollars left, didn't you have any change?

" 'A.—I had only 35 cents left in the watchpocket that was the only thing which appeared there. A quarter and a dime.'

"This witness was followed by *Hipólito Vega Maysonet*, who testified that he was a carpenter; that he had a small shop (*ventorrillo*) in Virtud Street, Santurce; that he purchased in his shop a hat from Manuel Collazo Pérez which cost him $1.75 (P. 24 Tr. Ev.). This witness identified the hat purchased by him from codefendant Manuel Collazo Pérez. The District Attorney offered in evidence the hat identified by this witness and it was admitted by the court without any objection from the defense. (P. 24 Tr. Ev.). The People closed its case with this witness and waived the remaining evidence as it was cumulative. (P. 25 Tr. Ev.)"

The evidence for the defense was to the effect that the defendant and Mario González had a personal argument followed by a fight and that at no time did the defendant steal any money from González. The conflict in the evidence was settled by the jury which believed the evidence for the prosecution and since said evidence is sufficient to support the verdict,[1] it will not be disturbed on appeal. *People* v. *Santos,* 67 P.R.R. 610; *People* v. *Rodríguez,* 68 P.R.R. 174; *People* v. *Blanco,* 68 P.R.R. 862.

---

[1] We must state that although the information was filed for grand larceny, the allegations actually charged the crime of robbery, inasmuch as it was alleged therein that the defendants "unlawfully, wilfully and maliciously and with the criminal intent to commit larceny and to deprive the owner of his legitimate property, took by means of force and against the will of Mr. Mario González Molina the sum of $12 in bills and a Panama hat worth $7.50, all this belonging to Mr. Mario González Molina." The evidence for the prosecution also showed the commission of the crime of robbery. However, since grand larceny, is included within the crime of robbery, 15 Cal. Jur. 891, Larceny, § 4; *People* v. *Church,* 116 Cal. 300 (1897), 48 P. 125; *People* v. *Covington et al.,* 34 P.(2) 1019, (1934); *Cf.* 2 Burdick, Law of Crime, 401, the verdict of guilty of grand larceny is supported by the evidence. In any event, any error in rendering such verdict is favorable to the defendant and he may not complain. 14 Cal. Jur. 106, Indictment and Information, § 79; *People* v. *Dong Pok Gip,* 164 Cal. 143, (1912), 127 P. 1031.

We turn next to the second error assigned.

 As the record before us shows, the judge of the lower court, at the outset of his instructions to the jury, stated: "The parties stipulated that no analysis of the evidence be made." Although the record does not show any stipulation to that effect, we are not in a position to decide that it was not so agreed by the parties, the more so when the record is silent as to whether or not the defendant through his lawyer objected to the statements of the court or took any exception to the instructions to the jury. It is now on appeal, that he contends for the first time, that there was no such stipulation. In *People v. Valentín*, 63 P.R.R. 756, 762, we stated:

"It is true that the court is bound to make a summary of the evidence, as has been decided in the cases of *People* v. *Cartagena*, 54 P.R.R. 827, and *People* v. *Lebrón*, 61 P.R.R. 634; but when the court, due to inadvertence or any other reason, does not make such a summary, it is incumbent on the accused to ask that the court do so. If the accused, as happened in the present case, waives that right when expressly stating that he has no objection to the instruction, he has no reason to complain. Moreover, we are not convinced that the accused has suffered any prejudice."

We are satisfied, under the circumstances of this case that as stated by the lower judge, the defendant waived the summing up of the evidence and that therefore he has no reason to complain. However, we must repeat here once more what we stated in *People* v. *Lebrón*, 61 P.R.R. 634, 647, and ratified in *People* v. *Rodríguez*, 69 P.R.R. 913, 920, that gives full expression to the procedure which district judges invariably should follow in trials by jury, according to subdivision 8 of § 233 of the Code of Criminal Procedure:

"The practice of the judge omitting to sum up the case to the jury is not only contrary to the express provisions of the law, but is also prejudicial to the ends of justice. The reason why the evidence should be summed up, as the transcribed section states, is that the essential facts adduced by both parties

should be pointed out to the jury. In other words, to sift the evidence, thus preventing the jury from being led into error or confusion by taking into consideration facts immaterial to the decision of the case. What is more, in his instructions the judge ought not to read the bare letter of the law. The jury is comprised of persons not learned in the law, and to read to them the law in this way is the equivalent of placing in their hands the statute in order that they may decide the case in accordance with the interpretation which they may deem most fitting. For that reason the better practice is, after summing up, to give the jury the different conclusions at which, in weighing the evidence, they may arrive, and to indicate to them the verdict that should be given in relation to each one of those conclusions. In that way the duties of the jury are circumscribed to their true limits, that is, the determination of questions of fact, and the situation is thereby avoided of the jury being in agreement as to the facts and erring in applying the law."

The judgment will be affirmed.

Mr. Justice Snyder did not participate herein.